May it please the Court, my name is Steve Katzmann with Wiener Miller & Katzmann for the appellant Graybox. I would like to reserve four minutes in rebuttal. Okay, watch your time. I'll try to help you. Very well, Your Honor. I'm very excited to be before this Court because this case presents a novel legal issue set in a story of some interesting facts involving a lawyer's betrayal, abuse of a legal system, and an attempt at repatriation of assets to secure some semblance of justice. The simple legal question here is whether a plaintiff can obtain a preliminary injunction on a fraudulent transfer claim where the injunction is not sought against the asset transferred or its proceeds, but against assets admittedly wholly unrelated to the claim. Before I address why the answer must be no, let me address some of the facts which prove that is the just result. This story involves David Bergstein, the owner of several film-related companies. He was betrayed by his long-standing counsel, Susan Traigub, who went to go to work for his financier, the Aramid Fund, and using stolen information, forces his companies into involuntary bankruptcies. Aramid was assisted by two law firms, one of them being Shrug Shrug and Levin. Bergstein and his related entities secured a $50 million verdict on jury against Ms. Traigub. But meanwhile, in the bankruptcy, over 150 lawsuits were filed against Bergstein and his affiliates. Nearly all of them were dismissed at the pleading stage. Eventually, after five years of litigation and many millions spent by Mr. Bergstein defending himself, Aramid itself files for bankruptcy in New York and agrees to settle with Mr. Bergstein, providing him with a $6 million claim and basically walking away from any assertion of claims there. The involuntary bankruptcies eventually get dismissed with very harsh criticisms of the administration of the case by Judge Russell, the longest-standing bankruptcy judge in America. Barry Russell, right? Yes, also author of the evidence match. We know him. Then struck, the lawyers for Aramid, without admitting any liability, agree to a settlement of $17.5 million and for releases from Aramid and Bergstein and certain related entities. The settlement specifically recognizes Bergstein for a substantial contribution. Counsel, this is your case. You can argue it however you want. But I'm thinking you're going to use your time better recognizing that we have all read the materials. We are familiar with the very complex facts involved here. And I, for one, am interested in asking a series of specific questions, which I'm hoping you can help me on. Do you want to proceed with your story? No, I'd love to hear it. Please, you're welcome to do so if you wish. Well, we could spend hours on the story. Indeed, you could. I'd love to hear the questions. Okay, let me start by you cited Grupo Mexico as being a bar to the preliminary injunction. I read that case as specifically excluding fraudulent conveyances. Do you agree with that? Yes. So what effect does Grupo Mexico have on this case? To finish the analysis, Grupo Mexicano excludes fraudulent conveyance law. Fraudulent conveyance law, its focal point is, and it's under the Uniform Fraudulent Transfer Act. I don't know, it's the Ninth Circuit. It's embodied in California, in California 3439. Yeah, we're familiar with that. The transfer has to be, the plain language is it has to be a preliminary injunction against the transfer or its proceeds. Or it has to be an equitable remedy, such a constructive trust. Focus Media following, it's not the Tenth Circuit, but it's still a pretty good circuit, the Fourth Circuit, and Collegiate Associates says, and it was cited in Focus Media, this court cited, when a plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets. Let me read you what I found from, in right, Focus Media. It says, Grupo Mexico thus exempts from its prescription against preliminary injunctions, freezing assets, cases involving bankruptcy and fraudulent conveyances, and cases in which equitable relief is sought. Is that what you're focusing on? I am focusing on that, but if you examine Focus Media and frankly examine every case that was cited by the appellees and cited by the court, everything there dealt with the preliminary injunction of a specific asset transferred or its proceeds. The issue was that the assets transferred, not funds that are wholly related. So you don't believe that Grupo Mexicano excludes claims sounding in the Fraudulent Conveyances Act generally? Not as a general proposition, no. I think you have to show. You can't just say, okay, there's a fraudulent transfer claim. We can freeze whatever we want. So you're saying there's a tracing requirement? I'm saying that there has to be an establishment that these funds were, that the funds were transferred were at issue. And, yes, there has to be some sort of requirement because even in the cases that they cited, such as Kremen v. Cohen, the court denied the preliminary injunction when the court found that the assets were not specifically related to the transfer. So I don't think. In which case are you referring to in that? It's in our briefs, Your Honor. It's the Kremen v. Cohen case, I think. I don't know if I'm pronouncing it correctly. I can find it when I go back and sit down. Okay. More, you know, in fact, Your Honor, this whole analysis has actually been ratified by the Supreme Court six days ago. In the, and I submitted this supplemental authority this morning and provided it to opposing counsel. In the Lewis v. United States case. This one? Yes. And there, it was the court, it was a tracing case. The, in citing, by the way, citing Grupo Mexicano, reaffirmed the proposition that, and this was a health care fraud case, and the government was seeking a preliminary injunction against assets unrelated to the forfeiture. And the Supreme Court says you can't do that. You can only go after the tainted funds. You can't go after the unrelated funds. Wait a minute, though. Isn't that the case about whether a person's going to have money for attorney fees? That's the case you're talking about? Yes. It's a Sixth Amendment case. That's a very different case. It's a Sixth Amendment case, Your Honor, but the analysis that they included in there talked about how the government is merely a prepetition creditor. And I would submit to the court here that the mere fact that they've alleged a fraudulent transfer claim against funds that are, doesn't give them a right to go after any assets of the debtor that are completely unrelated. That would undermine Grupo Mexicano. Grupo Mexicano and even the discussion of oncology associates cited by the Ninth Circuit placed limitations on that. Okay, but you do agree that the Lewis case is not controlling here, the one we just talked about? Well, I would. That's a very, very different analysis and a very, very different situation, right? I would submit it's distinguishable, yes, Your Honor. We would agree with you. Well, then I'm already ahead of the game. You might have said that, but could you circle back? Grupo Mexicano says that it was not expressing an opinion on the applicability of the fraudulent conveyances acts under State law. I mean, it certainly left that open. And, you know, I hear you arguing, saying, well, it didn't leave it open. It's really closed. And explain to me why that doesn't leave it open for these types of claims. Grupo Mexicano, and if you look at the law, the analysis, it stated the proposition of getting a preliminary injunction on a legal claim for money would basically do an end run around all the State law of attachment and basically would create, and the quote that I particularly like, is not a rule of flexibility but of omnipotence. And it recognized that a general creditor has a right to the use of his assets. Well, wait a minute. I think you're turning the attachment thing completely backwards. Are you saying that if somebody has a judgment and they want to attach the assets of the debtor, and if those assets are not traceable to the creditor, that they can't attach them? Is that what you're saying? No. You put a fact in there that was different than this case. Well, I think it's the fact that's involved in this case because you're saying there's a traceability requirement. What I'm trying to understand is it seemed to me you were saying that you can't attach assets that are not traceable. And Grupo Mexicano seems to carve out fraudulent conveyances from the teachings otherwise applicable in Grupo Mexicano. And as my colleague has just pointed out, the issue is open in our circuit, right? Well, not according to the circuit. About how this applies to the Fraudulent Conveyances Act. Well, I would submit to the court that it's not open because, well, perhaps if you don't want to follow the analysis of Oncology Associates that the court cited in Focus Media, and there's district court decisions that have specifically sedated it has to be the assets or its proceeds. Then I ask you, how does the whole, certainly in California, we have this whole regime, and I'm sure that's true in Colorado and other states, there's a whole system that we have for creditors attaching, seizing, foreclosing on assets. And there's no requirement in almost any instance where those assets have to be traceable to the creditor. If they have assets, you can go after them. So my question to you is, given the fact that Grupo Mexicano seemed to carve out the issue about fraudulent conveyances, why should we treat assets that are allegedly the result of a fraudulent conveyance any differently than the assets that could be seized by a creditor in California generally? That is, they're not traceable. If they have assets and they're free to be seized, you can attach or whatever. Well, first, in the other, what you were talking about earlier, you were talking about the post-judgment context. This is a prejudgment. I get all that. I'm just saying that the reality is California law and other law does not require tracing. You don't have to show a previous ownership or sale of those assets. And I'm asking, why should it be any different in this situation? California doesn't require tracing, but it requires for a prejudgment attachment under the 3439 for it to be the transfer or its proceeds. And here it's clear the record establishes the settlement is completely. You'll never be able to establish that under 3439, that that is either the transfer or its proceeds. And my point about Grupo Mexicano is by allowing this ruling, if this ruling allows to stand, and I'm already past my time, but I'll try to wrap up here in a few seconds because I want to say some rebuttal. Allowing this ruling to stand will do a complete end run around Grupo Mexicano because you're basically stating where they said if you want to get a prejudgment attachment, there's a whole bunch of law, follow that law. Here, the plain language says it has to be the transfer or its proceeds. And if you open this up, then any preliminary, any fraudulent transfer with any permanent injunction means you can attach any assets, and that would run afoul of Grupo Mexicano. In your view, what should be our bottom line? Bottom line should be follow the plain language of the statute, and that if you can establish, and every case that we've analyzed, every case cited by them and every case that we've analyzed, we've dug down into the record there, showed the complaint, showed the court's rulings. There was always an analysis to see whether there was a nexus between the transfer and the assets sought to be enjoined. And that's what I'm saying. There has to be some showing. Otherwise, you're running afoul of longstanding law here, protecting the rights of owners of property. And you're saying Grupo Mexicano embodies the best of that concept, right? It's not a 10th Circuit case, but it's a good case, right? It's a Supreme Court case. I would state that allowing this ruling to stand would run afoul of Grupo Mexicano, and I think that the other cases that we've cited support that proposition. Okay. All right. I know you're anxious to say something. Always, Your Honor. My name is Jim Walker. It's a distinct privilege to appear before this court and to represent Wimbledon Fund with respect to this appeal. Obviously, we respectfully disagree with Mr. Katzmann and his client, and the reason being is squarely set forth in our briefs, but if I could address your question, Your Honor, directly. Grupo Mexicano most certainly underscored the fact that there were no claims for injunctive relief. It was a simple claim for money damages, breach of contract, and there was nothing at all with respect to a claim for injunctive relief present. The cases that we've cited that follow Grupo Mexicano made clear that in those instances where there is a fraudulent conveyance or fraudulent transfer claim and where there is a request for injunctive relief, which is by its very nature equitable relief, then it is appropriate for the district court, as Judge Snyder has done here, to enter a preliminary injunction solely for the purpose of preserving the status quo so that then the tracing that they're saying must be done can be done at a subsequent date, but there's nothing in the cases that we've cited you to that follow Grupo Mexicano that suggests that there was a tracing requirement. Yes, Your Honor. In your view, is it important that this was a preliminary injunction as an equitable matter, or is it important because the claim was based on a fraudulent conveyance theory? Both, Your Honor. Those are the two material distinguishing factors from Grupo? Yes, because the Grupo court and the courts to which we've cited this court that follow made clear that there was no claim for equitable relief asserted in the Grupo case. And why is that significant from the underlying logic of Grupo Mexicano to our situation? Why are those differences important? The difference begins, Your Honor, with the cut of the statute itself. It allows for a judgment against the transferee for the value of the asset transferred. We are asserting such a money damages claim in this case. However, the other provision which we invoke in our claim also allows for the judgment against the transferee for the value also allows for an injunction against the asset transferred or its proceeds. Now, one thing that's an important distinction to make is that they seem to ignore a very important component of Judge Snyder's ruling, her injunction. It is a general asset freeze. It applies to all of Graybox's assets up to and including the amount of $2.412 million. And she did not specifically enjoin just the settlement proceeds, nor did we request that the injunction be limited just to the settlement proceeds. She's frozen every asset everywhere located that is owned or controlled by Graybox up to the $2.412 million amount of the fraudulent transfer for which we have sued. If, just hypothetically, putting aside for a moment the fact this is a general asset freeze, the preliminary injunction only affects $2,412,000, if I understand correctly. Yes, Your Honor. The transfer is for $2,900,000. The bankruptcy claim, I think, was for $200,000. So there's a delta there. Yes, Your Honor. Does that make any difference in our analysis, the fact that even if the whole $2,400,000 is frozen, if you will, there's still money left over to satisfy the bankruptcy claim, even though it's not a party to the transaction? Does it matter? Yes, Your Honor. We have argued and we have established, I believe, in the briefing exactly that. That falls under the rubric of their argument that we had willfully violated the stay. Then they tended to kind of back off the willful aspect but claim that it was nonetheless a violation of the stay. And when they backed off the willful, what they did was they came in with these attorney's liens. And they then argued, well, there's more than $2 million in attorney's liens. There's $2.412 million in injunction. And so that would crowd out, in essence, the agreement that Mr. Bergstein had to pay the Trager trustee $200,000. But the fact remains that the attorney's liens, as I believe we've more than amply established, were illusory at best. They didn't even attach to their declarations a copy of the engagement contract establishing the party or parties for whom they were providing legal services. They didn't identify or make any claim whatsoever in the declaration that the settlement proceeds were themselves the fruit or the product of the legal services they provided, therefore providing them a lien. But to make sure that I answer your question directly, if you just simply look at a general asset freeze of $2.412 million, the settlement proceeds that Mr. Katzmann's law firm received were $2.9 million. And he did, in fact, confirm that they were received. And so we pointed out that certainly the attorney's liens are illusory. Harm to the non-parties, as Joe Snyder found, doesn't count within the context of the balancing of the equities or the public interest.  And it's interesting to note, and I apologize, I haven't looked to see specifically by what means this court could take judicial notice of the bankruptcy court's docket. But that settlement has been approved. It's gone through. All of the Knapperstack, Sadat, and Bianca interventions or claims that they threatened saying that, well, if we don't get our money out of this $2.9 million, we're going to bust up the settlement in the bankruptcy court. None of that ever happened. I suspect, although there's nothing in the record to be honest, Your Honor, that the Traigub trustee was in fact paid his $200,000. None of the interventions were filed in this case that the lawyers had threatened. In fact, Victor Song, the one intervention that did get filed, is filed in a completely different case. He didn't even file it in our case. And he filed it after the fact. And even in that intervention, when he attached his engagement contract, I think having kind of read our brief on that issue, even there he deletes the identity of the individuals to whom he was contracting, with whom he was contracting in that engagement, and for whom he was providing legal services. So it seems fairly clear that they do not, even the attorneys' liens, they do not want to identify the companies they're representing or the individuals they're representing because it would underscore quite clearly that those fees for which they are claiming, the fees they're claiming, had nothing to do with the settlement proceeds. So we don't believe that Grupo Mexicana has an application here because this court has not frozen an asset within the context of a simple breach of contract claim for money damages. Now, they try to make some hay out of the fact that, well, you know, there's no constructive trust claim. Well, the cases to which we cite this court that distinguish themselves from Grupo Mexicana, based on the presence and the assertion of a claim for equitable relief, are looking at fraudulent transfer cases where they sought an injunction. And we are seeking not just the preliminary injunction that Judge Snyder allowed, but we're seeking a permanent injunction as well. And that permanent injunction applies as the preliminary injunction applies. The permanent injunction will apply with respect to all assets in Graybox's possession or control that would evidence funds from our investment or its proceeds. Yes, Your Honor. Nothing? Okay. I also want to point the court to the standard for the asset freeze. I think that's important here. The district court correctly applied the asset freeze standard, which is a party seeking an asset freeze must show a likelihood of dissipation of the claimed assets or other inability to recover monetary damages. Well, they were actually contending in Mr. Bergstein's declaration that he was going to dissipate these proceeds. There was the trustee's report. And I would like to address that very quickly. You know, much has been made of the remarks made by Judge Russell with respect to the trustee and his counsel. And we argued, and I was the person arguing for the injunction, and it was briefed out of my office, that, you know, certainly the bankruptcy court judge took issue with the way that the trustee and his counsel had proceeded. I mean, they filed well over 100 adversary proceedings. And in the court's ruling, Judge Russell makes clear that they took apparently nothing into account as to any administrative or estate assets available to prosecute those lawsuits. Okay. Well, that's well and good. But to suggest, as they do in their briefs, that the cases were dismissed at the pleading stage, to try to imply somehow that that was a result of a Rule 12 motion or a disposition on the merits is simply not correct. They were dismissed because they reached an agreement, ultimately, with the bankruptcy court where all those cases went away because there weren't enough assets in the estate to prosecute them. And how in the world can the criticism of the trustee and his counsel somehow cast aspersions or cast any question upon Mr. Bergstein's own sworn statement at his deposition that is cited and quoted at length in the trustee's report? And we cite and quote to that same testimony in here. What do you want us to rule? What do you specifically are you seeking at this point? Your Honor, I would ask simply that the court affirm Judge Schneider's injunction in all respects. Does that answer your question adequately, sir? Yes. Are there any other questions? I don't think so. Well, again, it's a great honor to appear before this court. Having great respect for your time, I will yield the balance of my time to the panel. Thank you, counsel. Thank you. Your opponent is also anxious to come up again. There he is. Lawyers always love to be up here. Of course they do. And you're both good lawyers, so we appreciate your arguments. Thank you. And I would agree with the quality of opposing counsel. Opposing counsel did make reference to matters that are outside this record. We recognize that. And at least for myself, I don't think we need any request for judicial notice. That's not going to bear on our decision here. But I believe in candor for the court. Yes, the Trager trustee was paid $200,000. Yes, Mr. Bergstein and all the parties asserting lien rights consented to that because that was a first priority. There are other things that are very important as to this trustee's report that are outside the record that I could submit to, but I'm not going to. This concept of a general asset freeze as being ability to – well, first of all, there wasn't just a general asset freeze. We saw it. They were seeking to freeze the money that was the truck settlement. They even said there's no other money to freeze. But there was a general asset freeze, right? Isn't that the way it's worded? No. The court's orders enjoined specifically, and frankly are an affirmative injunction in the third order, to me holding that – taking that money from Aramid and holding that money. Right. So it's a specific freeze. That's all there was. It was – that's all that there was to be able to freeze, yeah. From what I can recall. I won't – I'm not – The way you define the freeze is in the eye of the beholder, then. It's general if you say that it includes everything that the company had. It's specific if you're talking about just that $2,412,000. My third point, perhaps, on all that is the most important. It doesn't matter whether it's a general asset freeze or not. You can't sidestep the law, which, by the way, and I said Grupo Mexicano was a great case. And so is Gran Financiera because it says a money claim for which they're seeking here is not proper. It's a legal claim for damages. And a legal claim for damages, you're not entitled to a preliminary injunction. I would submit on that. I'm afraid your time is up. I appreciate the fact that we could discuss this very interesting case for a long time. But we will not do so today. We thank you both for your fine arguments, and the case just argued is submitted.
judges: Tymkovich, Farris, M. Smith